185 F.Supp. 369 (1960)
DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Plaintiff,
v.
BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association, individually and as representative of the brakemen employed by the plaintiff; Local Lodge No. 32 and B. E. Roark, individually and as Local Chairman of said Lodge; Local Lodge No. 401 and H. G. Thayne, individually and as Local Chairman; Local Lodge No. 446 and W. C. Chandler, individually and as Local Chairman; Local Lodge No. 349 and Carl F. Ahrens and N. E. Doolittle, each individually and as a Local Chairman of said Local Lodge; Local Lodge No. 31 and M. C. Feather, individually and as Local Chairman; R. E. Carroll, individually and as General Chairman of the Brotherhood of Railroad Trainmen and as representative of the Brotherhood of Railroad Trainmen and of the above-named Local Lodges and of the membership thereof employed by the plaintiff, Defendants.
Civ. No. 6796.
United States District Court D. Colorado.
July 27, 1960.
*370 T. A. White, T. A. Chisholm, Kenneth D. Barrows, Jr., Denver, Colo., Walter J. Cummings, Jr., Chicago, Ill., for plaintiff.
Philip Hornbein, Jr., Denver, Colo., Wayland K. Sullivan, Cleveland, Ohio, James L. Highsaw, Jr., Washington, D. C., for defendants.
CHILSON, District Judge.
The essential facts are not controverted.
The Brotherhood of Railroad Trainmen, in accordance with the Railway Labor Act (44 Stat. 577, 45 U.S.C.A. § 151 et seq.), submitted to the National Adjustment Board certain claims of some of its members for additional pay, growing out of the interpretation or the application of pre-existing contracts of employment entered into between the Brotherhood and The Denver and Rio Grande Western Railroad Company.
In December, 1959 and January, 1960, the National Adjustment Board made money awards in favor of the employees, and entered orders for the railroad to pay the first award on or before January 17, 1960 and the second award on or before February 20, 1960.
The railroad refused to make payment.
On May 16, 1960, the employees went on strike to enforce payment of the awards. The railroad brought this action to enjoin the strike. A preliminary injunction was entered and the issue now before the Court is whether or not a permanent injunction should issue.
The Railway Labor Act [45 U.S.C.A. § 153 First (p)] provides in essence that if a carrier does not comply with an order of the Adjustment Board of the kind here involved, the employees may file an action in the District Court of the United States to enforce the award.
The railroad contends that such a court action is the sole means by which an award of the Board may be enforced.
The Brotherhood makes two contentions, first, that the employees' rights of enforcement are not limited solely to a court action, but that they have the alternative right to enforce the award by strike. Secondly, the Brotherhood contends that the Norris-LaGuardia Act (29 U.S.C.A. §§ 101-115) prohibits this Court from granting injunctive relief to prevent a strike to enforce the awards.
Although the United States Supreme Court has not had occasion to pass upon the first question here involved, namely: whether or not the employees' sole means of enforcement of such an award is by resort to the court, the United States Supreme Court has on more than one occasion reviewed the purpose and Congressional intent of the Railway Labor Act and the 1934 amendments thereto. [See Elgin, Joliet and Eastern Railway Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886; Brotherhood of Railroad Trainmen et al. v. Chicago River and Indiana Railroad Co. et al., 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622; Union Pacific Railroad Co. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed. 2d 1460.
*371 From the Court's construction of the Railway Labor Act in the foregoing cases, it is clear that the Act recognizes two classes of controversy which are traditionally referred to as the "major" and "minor" disputes of the railway labor world.
"Major" disputes relate to the disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement, or where it is sought to change the terms of one. They look to acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
"Minor" disputes contemplate the existence of a collective agreement already concluded, and the dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation. In other words, a minor dispute relates to rights accrued and not merely to have new ones created for the future.
The Railway Labor Act as amended in 1934 marks out two distinct routes for settlement of the two classes of disputes.
Major disputes, if not settled by negotiation, go first to mediation under the National Mediation Board; if that fails, then to acceptance or rejection of arbitration, and finally, to possible presidential intervention. But as to major disputes, compulsion goes only to insure that these procedures are exhausted before resort can be had to self-help such as strikes. No authority is empowered to decide the dispute, and no such power is intended unless the parties themselves agree to arbitration.
The course prescribed for the settlement of minor disputes is very different beyond the initial stages of negotiation. Thereafter the Act does not leave the parties wholly free at their own will to agree or not to agree. On the contrary, one of the main purposes of the 1934 amendments to the Railway Labor Act was to provide a more effective process of settlement.
An Adjustment Board was created to remove the settlement of minor disputes from a deadlock resulting from nonagreement of the parties, and to bring them within a general and inclusive plan of decision. The aim was not to dispense with agreement. It was to aid decision where agreement fails, and thus to safeguard the public as well as private interests against the harmful effects of a deadlock.
In this case we have a minor dispute.
The Railway Labor Act provides as to minor disputes that if the negotiations provided for in the Act do not result in an agreement, the dispute may be referred by either party to the National Adjustment Board [45 U.S.C.A. § 153 First (i)].
In accordance with this provision, the employees, through the Brotherhood, did submit the dispute to the Board. The Board made its award consisting of a money award to be paid by the railroad to the employees.
45 U.S.C.A. § 153 First (m) states that the awards of the Board shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award.
45 U.S.C.A. § 153 First (o) authorizes the Board to make an order directed to the railroad to make the award effective, and if the award includes a requirement for payment of money, the order will require payment to the employee on or before a day named.
Such an order was made in this case.
Title 45 U.S.C.A. § 153 First (p) recognizes the possibility that the railroad might not comply with the Adjustment Board's order, and provides in effect that if the carrier does not comply with the order of the Board within the time prescribed, the employees may bring an action in the United States District Court for enforcement of the award.
This is the only step provided by the Railway Labor Act which has not been taken by the employees in this particular dispute, and the employees contend that they are not limited to this prescribed *372 procedure to enforce the award, but may employ other means to do so.
As previously noted, the Supreme Court has not decided this precise question, but the Court, in its consideration of the Railway Labor Act, has pointed the way to the answer to the question here involved.
In Elgin, Joliet and Eastern Railway Co. v. Burley, supra, it was contended that the award of the Adjustment Board amounts to nothing more than an advisory opinion, and, therefore, the parties were entirely free to ignore the Board's decision and seek other means to determine their dispute. The Court said [325 U.S. 711, 65 S.Ct. 1288]:
"At the outset we put aside this broadest contention as inconsistent with the Act's terms, purposes and legislative history."
In the case of Slocum et al. v. Delaware, Lackawanna and Western Railroad Co., 339 U.S. 239, at page 244, 70 S.Ct. 577, at page 580, 94 L.Ed. 795, the Supreme Court, in speaking of the application of the Railway Labor Act to a minor dispute, said:
"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive."
In the case of Pennsylvania Railroad Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 1325, 3 L.Ed.2d 1422, the Supreme Court, again speaking of minor disputes, said:
"Our consistent regard for the importance of having disputes between railroad employees and carriers settled by the administrative Board which Congress established for that purpose requires respondent to resort to the NRAB for adjudication of his claim."
In the case of Brotherhood of Railroad Trainmen et al. v. Chicago River and Indiana Railroad Co. et al., supra, [353 U.S. 30, 77 S.Ct. 640] the Supreme Court reviewed the history and purposes of the 1934 amendments to the Railway Labor Act pertaining to the settlement of minor disputes, and stated without dissent,
"This record is convincing that there was general understanding between both the supporters and the opponents of the 1934 amendment that the provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field."
It is clear then that the procedures prescribed by the Railway Labor Act to arrive at a decision of a minor dispute are exclusive.
It is urged by the Brotherhood, however, that the procedure prescribed by the Act for the enforcement of the decision, as opposed to the procedure to obtain a decision, is not exclusive.
With this position this Court cannot agree.
"The purpose of the Railway Labor Act was to provide a framework for peaceful settlement of labor disputes between carriers and their employees to `insure to the public continuity and efficiency of interstate transportation service, and to protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failures of managers and employees to settle peaceably their controversies.'" Union Pacific Railroad Co. v. Price, 360 U.S. 601, at page 609, 79 S.Ct. 1351, at page 1356, 3 L.Ed.2d 1460.
To hold that the procedures for decision are exclusive and that the procedure for enforcement is not exclusive would be inconsistent with the purposes of the Act. The injury to the public is the same whether the interruption of interstate commerce is for the purpose of obtaining a decision or for the purpose of enforcing a decision. To permit the interruption of service for the purpose of enforcing a decision of the Adjustment Board, when the Act itself provides a remedy for such enforcement, would defeat the essential purposes of the Act.
*373 The Supreme Court, in considering the Railway Labor Act has said,
"The specification of one remedy normally excludes another." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297-301, 64 S.Ct. 95-97, 88 L.Ed. 61; Union Pacific Railroad Co. v. Price, 360 U.S. 601-608, 79 S.Ct. 1351-1355, 3 L.Ed.2d 1460. The Court concludes that Congress having provided a means of enforcement of the Board's award by court action, the prescribed procedure excludes any other means of enforcement, including enforcement by strike.
The Brotherhood asserts that the provision of the Act for enforcement of the award through Court [45 U.S.C.A. § 153 First (p)], affords the railroad an opportunity to relitigate the issues decided by the Adjustment Board, while the employee has no resort to the court to relitigate the issues if the award is adverse to him.
The assertion is correct, and the situation has led to a division of opinion within the Supreme Court and dissenting opinions in the cases of Pennsylvania Railroad Co. v. Day, 360 U.S. 548, at page 554, 79 S.Ct. 1322, at page 1325, 3 L.Ed.2d 1422, and Union Pacific Railroad Co. v. Price, 360 U.S. 601, at page 617, 79 S.Ct. 1351, at page 1360, 3 L.Ed.2d 1460.
However, the law which governs this Court is stated in the majority opinion in Union Pacific Railroad Co. v. Price, supra, as follows:
"The disparity in judicial review of Adjustment Board orders, if it can be said to be unfair at all, was explicitly created by Congress, and it is for Congress to say whether it ought be removed." Union Pacific Railroad Co. v. Price, supra, 360 U.S. at page 615, 79 S.Ct. at page 1359.
We turn now to a consideration of the application of the Norris-LaGuardia Act to this case.
The railroad contends that the Norris-LaGuardia Act does not apply to settlement of minor disputes under the Railway Labor Act, and therefore, the provisions of the Norris-LaGuardia Act do not prohibit injunctive relief in this case.
The employees first contend that the Norris-LaGuardia Act prohibits injunctive relief, except in cases where the mandatory provisions of the Railway Labor Act have been violated. Assuming this to be a correct statement of the application of the Act, the Court's determination that the remedy for the enforcement of the awards prescribed by the Act is exclusive, brings this case within the exception stated.
The employees next contend that the Norris-LaGuardia Act prohibits injunctive relief, because the carrier has not gone beyond its legal obligations under the Act and made additional efforts to settle the dispute (page 6, Defendants' Supplemental Memorandum). Defendants cite in support of this position the case of Brotherhood of Railroad Trainmen, etc. v. Toledo, Peoria and Western Railroad, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534. Injunctive relief was denied in that case because the carrier did not see fit to use one of the means provided by the Act to settle the dispute, namely: arbitration. This Court cannot read into that decision a requirement that the carrier must go beyond the procedures provided in the Act.
In this case the procedures provided by the Act to obtain a decision have been exhausted and a decision has been obtained. The carrier is not required to enter into further negotiations in an attempt to compromise the awards which have been made before it can apply for injunctive relief.
In considering the application of the Norris-LaGuardia Act to a minor dispute such as the one here involved, the Supreme Court has said:
"The only question which remains is whether the federal courts can *374 compel compliance with the provisions of the Act to the extent of enjoining a union from striking to defeat the jurisdiction of the Adjustment Board. The Brotherhood contends that the Norris-LaGuardia Act has withdrawn the power of federal courts to issue injunctions in labor disputes. That limitation, it is urged, applies with full force to all railway labor disputes as well as labor controversies in other industries.
"We hold that the Norris-LaGuardia Act cannot be read alone in matters dealing with railway labor disputes. There must be an accommodation of that statute and the Railway Labor Act so that the obvious purpose in the enactment of each is preserved. We think that the purposes of these Acts are reconcilable." Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co., 353 U.S. 30, at page 39, 77 S.Ct. 635, at page 640, 1 L.Ed.2d 622.
The Court in the same opinion (353 U.S. at page 41, 77 S.Ct. at page 641) further stated:
"In Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768 [72 S.Ct. 1022, 96 L.Ed. 1283], and other similar cases, the Court held that the specific provisions of the Railway Labor Act take precedence over the more general provisions of the Norris-LaGuardia Act.
"`Our conclusion is that the District Court has jurisdiction and power to issue necessary injunctive orders [to enforce compliance with the requirements of the Railway Labor Act] notwithstanding the provisions of the Norris-LaGuardia Act.' Id., [343 U.S.] at [page] 774, [72 S.Ct. at page 1025]."
This Court concludes it has injunctive power in this case, and a permanent injunction should issue.