BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association, individually and as representative of the brakemen employed by the plaintiff; Local Lodge No. 32 and B. E. Roark, individually and as Local Chairman of said Lodge; Local Lodge No. 401, and H. G. Thayne, individually and as Local Chairman; Local Lodge No. 446 and W. C. Chandler, individually and as Local Chairman; Local Lodge No. 349 and Carl F. Ahrens and N. E. Doolittle each individually and as Local Chairman of said Local Lodge; Local Lodge No. 31 and M. C. Feather, individually and as Local Chairman; R. E. Carroll, individually and as General Chairman of the Brotherhood of Railroad Trainmen and as representative of the Brotherhood of Railroad Trainmen and of the above named Local Lodges and of the membership thereof employed by the plaintiff, Appellants,

v.

THE DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Appellee.

No. 6614.

United States Court of Appeals
Tenth Circuit.

April 13, 1961.

James L. Highsaw, Jr., Washington, D. C. (Philip Hornbein, Jr., Denver, Colo., Wayland K. Sullivan, Cleveland, Ohio, Hornbein & Hornbein, Denver, Colo., Mulholland, Robie & Hickey, Washington, D. C., on the brief), for appellants.

Howard J. Trienens, Chicago, Ill. (Ray Garrett and William M. McGovern, Jr., Chicago, Ill., and T. A. White and Kenneth D. Barrows, Jr., Denver, Colo., and Sidley, Austin, Burgess & Smith, Chicago, Ill., on the brief), for appellee.

Before MURRAH, Chief Judge, PICKETT, Circuit Judge, and KERR, District Judge.

PICKETT, Circuit Judge.

■ This is an appeal from a decree of the United States District Court for the District of Colorado, permanently enjoining the defendants [1] from conducting a strike against the plaintiff's railroad to enforce payment of money awards made by the National Railroad Adjustment Board in favor of some of the railroad's employees who are members of the Brotherhood. The principal question for determination is whether the reme-

dies provided in Section 3 of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., are exclusive and deny to the employees or their representatives the right to call a strike to enforce the awards made by the Board. We agree with the trial court that the strike call was illegal because in disputes of the nature here involved the statutory remedy is exclusive, and the Board's money award may be enforced only by an action in the United States District Court as provided for in Section 3, First (p) of the Act. 45 U.S.C.A. § 153, First (p).[2]

The facts have been stipulated, and the findings of fact are not questioned here. The dispute arose under collective bargaining agreements governing the terms and conditions of employment of the employees represented by the Brotherhood. A number of the employees claimed that, under the provisions of the agreements, they were entitled to compensation for services rendered in addition to their regular duties. The Railroad denied the claims, and the employees resorted to the statutory procedure which resulted in money awards being made to the employees by the proper division of the National Railroad Adjustment Board. The Railroad refused to honor the awards, and a strike was called which, if carried out, would seriously affect the Railroad's operation.[3] Upon application of the Rail-

1. The defendants are the Brotherhood of Railroad Trainmen, the local lodges, and their officers.

2. 45 U.S.C.A. § 153, First (p), reads: "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment

Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

3. The Railroad is a common carrier, operating a system consisting of approxi-

road, the District Court temporarily enjoined the strike, and upon hearing the injunction was made permanent. Denver & R. G. W. R. R. v. Brotherhood of Railroad Trainmen, D.C.Colo., 185 F.Supp. 369.

■ The purposes of the Act are set forth therein,[4] and they have been stated in numerous Supreme Court decisions, a detailed recount of which would serve no useful purpose here. It suffices to say that the primary purpose of the Act and the 1934 Amendment thereto was to avoid interruption of commerce by promoting industrial peace, stabilizing the relationship between labor and management, and eliminating, as far as possible, the danger of strikes on the nation's railroads. Pennsylvania R. R. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Union Pac. R. R. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460;[5] Brotherhood of Railroad Trainmen v. Chicago River &

Ind. R. R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

■ Disputes over the interpretation or application of provisions of existing collective bargaining agreements have been generally referred to as "minor" disputes to distinguish them from those growing out of negotiations to reach an agreement on a contract relating to the future, which disputes are characterized as "major."[6] The latter usually affect the pay and working conditions of an entire class of employees. For the settlement of these two classes of dispute the statute fixes two distinct methods. Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R., supra; Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 722, 65 S.Ct. 1282, 89 L.Ed. 1886. When there is a failure to settle major disputes, after exhausting the statutory remedies, the employees are free to resort to economic du-

mately 2,100 miles of track, in both interstate and intrastate commerce, with main lines extending from Denver, Colorado Springs and Pueblo, Colorado, to Salt Lake City and Ogden, Utah, and with numerous branches on the main line. It has approximately 5,000 employees, investments in excess of $250 million, and a gross revenue from freight and passenger operations of approximately $75 million annually. It is an important part of the national railway system.

4. 45 U.S.C.A. § 151a provides:
   "The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

5. In Union Pac. R. R. v. Price, 360 U.S.

601, 609, 79 S.Ct. 1351, 1356, the court said:
   "The purpose of the Railway Labor Act was to provide a framework for peaceful settlement of labor disputes between carriers and their employees to 'insure to the public continuity and efficiency of interstate transportation service, and to protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failures of managers and employees to settle peaceably their controversies.' * * * "

6. The trial court defined the nature of these disputes as follows:
   " 'Major' disputes relate to the disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement, or where it is sought to change the terms of one. They look to acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
   " 'Minor' disputes contemplate the existence of a collective agreement already concluded, and the dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation. In other words, a minor dispute relates to rights accrued and not merely to have new ones created for the future." Denver & R. G. W. R. R. v. Brotherhood of Railroad Trainmen, D.C.Colo., 185 F.Supp. 369, 371.

ress. Order of Railroad Telegraphers v. Chicago & N. W. R., 362 U.S. 330, 341, 80 S.Ct. 761, 4 L.Ed.2d 774; Elgin, J. & E. Ry. v. Burley, supra, 325 U.S. at page 725, 65 S.Ct. at page 1290. But, as to minor disputes the statutory scheme for settlement is different. The law is well settled that "the jurisdiction of the Board to adjust such grievances and disputes of the type here involved is exclusive," [7] and the employees may be enjoined from striking over such disputes after they have been submitted to the Adjustment Board. In Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R., supra, the Court reviewed the legislative history of the Act, and held that the 1934 amendment was intended to provide for compulsory arbitration in minor disputes [8] so that a strike by employees could be enjoined for failure to submit to arbitration in accordance with the Act.

The contention here is that since the employees did submit their disputes to the Adjustment Board, which made money awards in their favor, the failure of the Railroad to honor the award leaves them free to strike. This position is premised upon the corollary contention that the provision authorizing an action to be brought in the federal district court is not mandatory. With these contentions we cannot agree. We think that the rationale of the Supreme Court decisions is to the effect that the statutory proceedings before the Board in minor disputes provide an appropriate and fair substitute for the right to strike, and that the district court action provided in Section 3, First (p) of the Act is the enforcement procedure in the compulsory arbitration machinery adopted by Congress in the 1934 amendment.[9] It there-

7. Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795.

8. In Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R., 353 U.S. 30, 34–35, 77 S.Ct. 635, 637, 1 L.Ed.2d 622, it was said:

"Section 3, First (m) declares that—

" 'The awards of the several divisions of the Adjustment Board * * * shall be final and binding upon both parties to the dispute * * *.'

"This language is unequivocal. Congress has set up a tribunal to handle minor disputes which have not been resolved by the parties themselves. Awards of this Board are 'final and binding upon both parties.' And either side may submit the dispute to the Board. The Brotherhood suggests that we read the Act to mean only that an Adjustment Board has been organized and that the parties are free to make use of its procedures if they wish to; but that there is no compulsion on either side to allow the Board to settle a dispute if an alternative remedy, such as resort to economic duress, seems more desirable. Such an interpretation would render meaningless those provisions in the Act which allow *one* side to submit a dispute to the Board, whose decision shall be final and binding on *both* sides. If the Brotherhood is correct, the Adjustment Board could act only if the union and the carrier were amenable to its doing so. The language of § 3, First, reads otherwise and should be literally applied in the absence of a

clear showing of a contrary or qualified intention of Congress.

"Legislative history of the provisions creating the National Railroad Adjustment Board reinforces the literal interpretation of the Act. The present law is a composite of two major pieces of legislation. Most of the basic framework was adopted in 1926. In 1934, after eight years of experience, the statute was amended, and in that amendment the Adjustment Board was born." (Footnotes omitted.)

9. The history of the legislation as set forth in Union Pac. R. R. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460; Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622; and Elgin, J. & E. R. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, sustains this conclusion. In the case of "Chicago River" the court, after referring to the pertinent legislative history of changes brought about by the 1934 amendments, said:

"The change was made with the full concurrence of the national railway labor organizations. Commissioner Joseph B. Eastman, Federal Coordinator of Transportation and principal draftsman of the 1934 bill, complimented the unions on conceding the right to strike over 'minor disputes' in favor of the procedures of the Adjustment Board:

" 'The willingness of the employees to agree to such a provision is, in my

fore is the only course to be followed in obtaining the enforcement of money awards.

In Union Pac. R. R. v. Price, supra, it was held that a railroad employee could not maintain a common law action for damages on a claim which had been denied by the Board, even though a carrier has a statutory right to relitigate money awards which the Board has directed it to pay. It is quite obvious that Congress thought that the statutory method for enforcing the Board's money awards in favor of employees was preferable to the devastating effect of an interruption of interstate commerce caused by a strike on a portion of the nation's railroad system. It is true that the Act does not provide a judicial review of the Board's actions when the employee is unsuccessful, but if this provision creates an unfair disparity, as the Supreme Court said in Union Pac. R. R. v. Price, supra [360 U.S. 601, 79 S.Ct. 1359], "it is for Congress to say whether it ought to be removed."

■ It is urged that the injunction entered in this case is prohibited by Section 8 of the Norris-LaGuardia Act, 29 U.S. C.A. § 108. We think this question was answered in the case of Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R., supra, in which it was held that the general terms of the Norris-La-Guardia Act could not be read alone in matters dealing with railway labor disputes, and that it did not prevent injunctions to prohibit strikes growing out of minor disputes which were specifically dealt with in the Railway Labor Act. See also Brotherhood of Locomotive Engineers v. Missouri-Kan.-Tex. R. R., 363 U. S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379; and Brotherhood of Railroad Trainmen v.

Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. Cf. Chauffeurs, Teamsters and Helpers Local Union No. 795 v. Yellow Trans. Frgt. Lines, 10 Cir., 282 F.2d 345.

Affirmed.

---

judgment, a very important concession and one of which full advantage should be taken in the public interest. I regard it as, perhaps, the most important part of the bill.'" (Footnote omitted.)

The Court continued, 353 U.S. at page 39, 77 S.Ct. at page 640:

"This record is convincing that there was general understanding between both the supporters and the opponents of the 1934 amendment that the provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field. Our reading of the Act is therefore confirmed, not rebutted, by the legislative history."