**TEXAS AND NEW ORLEANS RAILROAD COMPANY, Missouri Pacific Railroad Company and the Texas Mexican Railway Company, Plaintiffs,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN et al., Defendants.**

Civ. A. No. 13736.

United States District Court
S. D. Texas,
Houston Division.

July 21, 1961.

Baker, Botts, Andrews & Shepherd, Tom M. Davis, John F. Heard, Hutcheson, Taliaferro & Hutcheson, and Palmer Hutcheson, Jr., Houston, Tex., and Elmore H. Borchers, Laredo, Tex., for plaintiffs.

George L. Schmidt, Houston, Tex., for defendants.

INGRAHAM, District Judge.

Plaintiffs, Texas and New Orleans Railroad Company (hereinafter "T& NO"), Missouri Pacific Railroad Company (hereinafter "MoPAC"), and The Texas Mexican Railway Company (hereinafter "TEX-MEX"), seek to enjoin a strike called by the Brotherhood of Railroad Trainmen (hereinafter "Bof RT"), a labor organization representing some of plaintiffs' employees. A brief statement of pertinent facts follows to lend context to the threatened strike. These facts were gleaned from the pleadings and hearing of July 12–13, 1961.

When the bascule bridge was removed from the entrance to the Port of Corpus Christi, Texas, it became necessary to reroute and rearrange railroad service to the city and Port of Corpus Christi. Anticipating this necessity, the three railroads made these contracts:

(1) Primary Agreement between City of Corpus Christi, County of Nueces, Texas, Nueces County Navigation District No. 1, MoPAC, TEX-MEX, and T&NO. It set forth rail service rearrangements (track abandonment, new track construction, joint yard, track rights) and methods of operation. This

agreement contemplated other contracts and specified that as each was finalized a copy be filed with the Interstate Commerce Commission (hereinafter "Commission").

(2) Joint Yard Agreement between T&NO and TEX-MEX. It called for joint yard and rendition of joint switching service by joint TEX-MEX and T&NO crews. Operating costs of crews were to be prorated between the two railroads on agreed formula.

(3) Corpus Christi Joint Track Agreement. Contract between railroads and Navigation District granted trackage rights and allocated expenses.

After Primary Agreement was placed in final form and others in tentative form, application was filed with Commission under sections of the Interstate Commerce Act (hereinafter "Act"), especially 49 U.S.C.A. § 5(2), for approval of the contracts and authority to effectuate them. The Railway Labor Executives' Association, which includes BofRT, filed a protest with Commission, claiming plaintiffs' applications would affect adversely plaintiffs' employees. On November 16, 1960, Commission approved all transactions involved in the applications. Commission referred specifically to each of the agreements described above. Pursuant to Commission's order, the Joint Yard Agreement between T&NO and TEX-MEX (finalized and executed on November 17, 1960) was forwarded to Commission for filing on November 25, 1960. By letter of December 8, 1960, Commission acknowledged receipt and filing of Joint Yard Agreement.

█ The Commission's report of November 16 (sheet 12) provided:

"No facts have been disclosed indicating that Railroad employees will be adversely affected by any of the proposals involved herein. However, all of the authorizations herein will be made subject to the same conditions for the protection of employees adversely affected by any part of the transactions involved in these proceedings as prescribed in Oklahoma Ry. Co. Trustees Abandonment, etc. * * *"

Neither the Railway Labor Executives' Association nor BofRT sought rehearing of the November 16 decision by the full Commission or tried to have the order set aside by three-judge court. The order thereby became final.

Before filing these applications with the Commission, these railroads negotiated with their employees' unions trying to make agreements consonant with new operations contemplated in the agreements finally approved by the Commission. These negotiations continued after the order of November 16 and ultimately resulted in agreements with all unions except defendant BofRT. Plaintiffs allege BofRT has insisted that they make agreements providing for operations different from the provisions in the Commission-approved contracts, especially the Primary Agreement and Joint Yard Agreement. Railroads say they are willing to make an agreement with BofRT effectuating Commission's order. Under the Railway Labor Act it was necessary to seek mediation after above negotiations failed to produce accord. Such mediation continued until May 8 and May 31, 1961. After the expiration of the 30 days-statutory period following mediation, BofRT's General Committee served notice of a strike.[1]

---

1. At hearing much testimony was given by plaintiffs' officers relative to crippling consequences of threatened strike upon Texas' economy and railroads' revenues. It was shown that average daily loss of revenues of MoPAC's Gulf District would be $114,758, TEX-MEX $9,884, and T&NO $550,000. All but 500 of T&NO's 10,708 employees would be idled by strike and all but 150 of 4528 employees in Gulf District of MoPAC. On MoPAC alone a monthly payroll of over $2,000,000 would be lost. Finally, Gulf District of MoPAC served 1,614 separate industries in 1960. Disruption of MoPAC and T&NO service would seriously inconvenience major industry on the Texas Gulf Coast.

The parties argue as follows. BofRT says the Norris-LaGuardia Anti-Injunction Act (29 U.S.C.A. §§ 101–110, 113–115) bars an injunction in these circumstances. 29 U.S.C.A. § 101 provides:

"No court of the United States * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

29 U.S.C.A. § 107 provides the terms upon which exceptions are made to § 101, supra. Plaintiffs make no attempt to comply with § 107, for there is no pleading that unlawful acts have been committed or will be committed unless restrained, or that public officers charged with the duty of protecting railroad property are unwilling or unable to furnish adequate protection.

Further, BofRT claims plaintiffs failed to comply with 45 U.S.C.A. §§ 155(1) (b) and 156 in that forbidden changes in working rules and conditions were instituted by railroads during the mediation period. By virtue of these illegal changes BofRT contends plaintiffs run afoul of yet another section of Norris-LaGuardia, i. e., 29 U.S.C.A. § 108:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

Plaintiffs acknowledge their want of compliance with the Norris-LaGuardia Act's dictates of 29 U.S.C.A. § 107. They urge the court to break new ground by judicially engrafting upon Norris-LaGuardia an additional exception. Plaintiffs declare "illegal" any strike to prevent their complying with contracts approved by the Interstate Commerce Commission under Section 5(2) of the Act (49 U.S.C.A. § 5(2)). The court is asked to enjoin such strike despite Norris-LaGuardia's ban.

Plaintiffs observe that by Section 5 (11) of the Act (49 U.S.C.A. § 5(11)) the Commission's authority is "exclusive and plenary". BofRT, say plaintiffs, has no veto upon Commission action. Plaintiffs are empowered to carry out their Commission-approved contracts free of the restraints of federal laws (49 U.S.C.A. § 5(11)).[2] 49 U.S.C.A. § 5(11) is thought by plaintiffs to free them from the restrictions of Norris-LaGuardia in their endeavor to abide by the Commission's order of November 16, 1960. Railroads contend that Section 16(12) of the Act authorizes this court to enjoin a strike of rail employees called to prevent compliance with a Commission order.[3]

2.  49 U.S.C.A. § 5(11):
"The authority conferred by this section (upon the Commission) shall be exclusive and plenary, and any carrier * * * participating in * * * any transaction approved by the Commission * * * shall have full power * * * to carry such transaction into effect * * * and any carriers * * * are relieved from the operation of the antitrust laws and of all other restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry in-

to effect the transaction so approved * * *."

3.  49 U.S.C.A. § 16(12):
"If any carrier fails or neglects to obey any order of the commission other than for the payment of money * * * the Interstate Commerce Commission or any party injured thereby, or the United States, by its Attorney General, may apply to any district court of the United States of competent jurisdiction for the enforcement of such order. If, after hearing, such court determines that the order was regularly made and duly serv-

Plaintiffs cite a number of cases in which judicially-created exceptions have been carved out of the broad domain of Norris-LaGuardia. In the main these authorities constitute reconciliations of Norris-LaGuardia with specific later labor legislation. Thus, Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 1956, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, finds Norris-LaGuardia no bar to injunctive relief when there exists a "minor dispute" referable to the Railroad Adjustment Board under the terms of the Railway Labor Act. The rationale of this case is that the more general provisions of Norris-LaGuardia must yield to the more specific provisions of the Railway Labor Act with reference to "minor disputes". Similarly, Denver and Rio Grande Western Railroad Company v. Brotherhood of Railroad Trainmen, D.C. D.Colo.1960, 185 F.Supp. 369, affirmed Denver and Rio Grande Western Railroad Company v. Conley, 10 Cir., 1961, 293 F.2d 612, enjoins threatened strike by brotherhood to enforce Adjustment Board award in "minor dispute". Again, result is adjustment of Norris-LaGuardia to accommodate the Railway Labor Act. An analogous case of accommodation of Railway Labor Act with Norris-LaGuardia is Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

Another labor statute, Taft-Hartley Act, is reconciled with Norris-LaGuardia in Chauffeurs, Teamsters and Helpers Local Union No. 795 (Int'l Brotherhood of Teamsters) v. Yellow Transit Frgt. Lines, 10 Cir., 1960, 282 F.2d 345. This was an action by trucking company to enjoin teamsters violating no-strike clause of their collective bargaining contracts. Section 301 of Taft-Hartley Act (29 U.S.C.A. § 141 et seq.) provides that suits for violation of collective bargaining agreements may be brought in federal district court. Trucking companies contended that an injunction to enforce

this no-strike clause is permissible under Section 301. It was decided that the jurisdiction accorded district courts by Section 301 of Taft-Hartley prevails over Norris-LaGuardia.

I come then to the heart of plaintiffs' skillful argument. Pointing to the exceptions created in Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., supra (reconciling Railway Labor Act and Norris-LaGuardia) and Chauffeurs, Teamsters and Helpers Local Union No. 795 (Int'l Brotherhood of Teamsters) v. Yellow Trans. Frgt. Lines, supra (reconciling Taft-Hartley Act and Norris-LaGuardia), this court is asked to emulate those decisions. I am requested by plaintiffs to "reconcile" the Interstate Commerce Act and Norris-LaGuardia. Only by enjoining defendant BofRT, say plaintiffs, can the hegemony reposed in the Commission by 49 U.S.C.A. § 5(11) be preserved from encroachment by BofRT.

The issue raised then is: does the Norris-LaGuardia Act bar injunctive relief against a strike to prevent a railroad's complying with a contract approved by the Interstate Commerce Commission pursuant to 49 U.S.C.A. § 5(2)? I think so.

█ Any exceptions to Norris-LaGuardia must be justified by the most compelling policy considerations. For cases stating the pervasive and compelling character of the Anti-Injunction Act see Afran Transport Co. v. National Maritime Union, D.C.S.D.N.Y.1958, 169 F.Supp. 416, and A. H. Bull Steamship Co. v. Seafarers' International Union, 2 Cir., 1957, 250 F.2d 326.

█ But, argue plaintiffs, just as exceptions have been created to enforce the Railway Labor Act and Section 301 of the Taft-Hartley Act, so ought this court decree an additional exception to enforce 49 U.S.C.A. §§ 5(2), 5(11) and 16(12). Section 5(11) of the Act purports to give the Commission "exclusive

ed, and that the carrier is in disobedience of the same, such court shall enforce obedience to such order by a writ of in-

junction or other proper process * * * to restrain such carrier * * * from further disobedience * * *".

and plenary" authority, free from various federal and state statutory restraints. I do not agree with plaintiffs' contention that 49 U.S.C.A. § 5(11) removes the bar of Norris-LaGuardia. It declares *they* are relieved from the operation * * * of all other restraints, limitations, and prohibitions of law" etc. "They" refers to the carriers under Commission mandate; the prohibition of Norris-LaGuardia rests not on the carriers but on the court. Its restraint on this court's jurisdiction is not lifted by Section 5(11).[4] Nor does the court agree with railroads' claim that Section 16(12) of the Act compels an injunction here. Section 16(12) is inapplicable by its very words, i. e., "If any carrier fails * * * to obey any order of the commission * * * any party injured thereby * * * may apply * * * for the enforcement of such order." I submit Section 16(12) is plainly referable to a dispute between government and carrier against defaulting carrier. Here, plaintiffs do not disobey the Commission, and Section 16(12) does not provide for carriers' relief against their own employees.

Plaintiffs' cases are clearly distinguishable in my view. Brotherhood of Railroad Trainmen v. Chicage River & Indiana Railroad Co., supra, enforced by injunction the Railway Labor Act's explicit provisions for settling "minor disputes". The threatened strike at bar is a major dispute within the usage of the Railway Labor Act (45 U.S.C.A. § 151 et seq.) Also, as demonstrated supra, the statutes plaintiffs say must be reconciled with Norris-LaGuardia (e. g., 49 U.S.C.A. §§ 5(2), 5(11) and 16(12)) not only fail to support plaintiffs' claims but are not labor legislation as is the Railway Labor Act. Chauffeurs, Teamsters and Helpers Local Union No. 795 (Int'l Brotherhood of Teamsters) v. Yellow Trans. Frgt. Lines, supra, reconciles the grant of jurisdiction in Section 301 of Taft-Hartley with the restriction of jurisdiction in Norris-LaGuardia, Section 301 involves collective bargaining ·contracts, while 49 U.S.C.A. §§ 5(11) and 16(12) concern Commission orders, not management-labor conflict. The point is simply that the exceptions heretofore engrafted judicially upon Norris-LaGuardia aimed at accommodation of apparently conflicting provisions in two different *labor* statutes. Plaintiffs seek to weaken Norris-LaGuardia to enforce non-labor legislation, i. e., the Interstate Commerce Act.[5]

■ It is clear that illegality under non-labor legislation (e. g., 49 U.S.C.A. §§ 5(2), 5(11) and 16(12)) does not remove the bar of Norris-LaGuardia upon federal injunctive power. A case closely in point factually is Order of Railroad Telegraphers v. Chicago & N. W. R. Co., 1960, 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed. 2d 774. Railroad and union were arguing over displacement of railroad employees by consolidation of stations in villages and hamlets whose traffic warranted closing. Just as plaintiffs have sought Commission sanction upon Corpus Christi consolidation, so did railroad seek approval of station consolidation by state regulatory groups in Telegraphers

4. United States v. Railway Exp. Agency, D.C.D.Del.1951, 101 F.Supp. 1008, merely carries out the clear mandate of 49 U.S.C.A. § 5(11) to the effect that carriers' agreements approved by Commission are freed from antitrust laws.

5. Baltimore & Ohio R. R. Co. v. Chicago River & Indiana R. R. Co., 7 Cir., 1948, 170 F.2d 654, comes nearest to supporting plaintiffs. One railroad sued under 49 U.S.C.A. § 16(12) to enforce a Commission order against a second railroad. The injunction granted to enforce the order ran also against defendant carrier's employees. Since the dispute over the Commission order was between two railroads, it was not a "labor dispute" between employer and employees within Norris-LaGuardia. The situation at bar differs in these respects: (1) our dispute is railroads v. employees and union, not railroad v. railroad; (2) enforcement of Commission order is sought solely against union, not merely incidentally to primary enforcement against carrier; (3) Section 16(12) of Act clearly supports carrier v. carrier enforcement; and (4) Section 16(12) by its wording does not provide for railroads v. union suit.

case. The Telegraphers threatened strike over consolidation just as does BofRT. The Supreme Court, in denying the carrier's request for injunction, said in 362 U.S. at pages 338–340, 80 S.Ct. at page 765:

"The railroad has argued throughout the proceedings that the union's strike here may be enjoined, regardless of Norris-LaGuardia, because its effort to bargain about the consolidation and abandonment of railroad stations (compare plaintiffs' argument at bar about Corpus Christi yard consolidation) is unlawful. It is true that in a series of cases where collective bargaining agents stepped outside their legal duties * * * we held that they could be enjoined. None of these cases, however, enjoined conduct which the Norris-LaGuardia Act withdrew from the injunctive power of the federal courts except the Chicago River case which held that a strike could be enjoined to prevent a plain violation of a basic command of the Railway Labor Act * * * The Court there regarded as inapposite those cases in which it was he'd that the Norris-LaGuardia Act's ban on federal injunctions is not lifted because the conduct of the union is unlawful under some other, nonlabor statute. *Here, far from violating the Railway Labor Act, the union's effort to negotiate its controversy with the railroad was in obedience to the Act's command that employees as well as railroads exert every reasonable effort to settle all disputes 'concerning rates of pay, rules, and working conditions.' * * * There is no express provision of law, and certainly we can infer none from the Interstate Commerce Act, making it unlawful for unions to want to discuss with railroads actions that may vi-*

*tally and adversely affect the security, seniority and stability of railroad jobs."* (Emphasis supplied.)

Lee Way Motor Freight v. Keystone Freight Lines, 10 Cir., 1942, 126 F.2d 931, rejects claims, similar to plaintiffs', as to efficacy of 49 U.S.C.A. § 16(12) in a "labor dispute" between carrier and employees' union. An attempt similar to plaintiffs to evade Norris-LaGuardia by reference to the Interstate Commerce Act's plenary authority was thwarted by the Fifth Circuit in East Texas Motor Freight Lines v. International Brotherhood, etc., 5 Cir., 1947, 163 F.2d 10, 12.

In summary the case at bar represents the classic "labor dispute" clearly within the purview of Norris-LaGuardia. Plaintiffs' argument urging creation of an added exception, facile and well-presented though it be, does violence to the national policy enunciated by the Norris-LaGuardia Act, Mr. Justice Black's closing words in Telegraphers at 362 U.S. 342, 80 S.Ct. 768, are apt:

"It may be, as some people think, that Congress was unwise in curtailing the jurisdiction of federal courts in railroad disputes as it did in the Norris-LaGuardia Act. Arguments have even been presented here pointing to the financial debilitation of the respondent * * * Railroad and to the absolute necessity for the abandonment of railroad stations. *These arguments however, are addressed to the wrong forum.* If the scope of the Norris-LaGuardia Act is to be cut down in order to prevent 'waste' by the railroads, *Congress should be the body to do so. Such action is beyond the judicial province and we decline to take it."* (Emphasis supplied.)

Plaintiffs' request for injunctive relief will be denied. The clerk will notify counsel to draft and submit appropriate order.