**LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Plaintiff,**

v.

**BROTHERHOOD OF LOCOMOTIVE EN-
GINEERS et al., Defendants.**

Civ. No. 3749.

United States District Court
W. D. Kentucky,
Louisville Division.

Jan. 18, 1961.

John P. Sandidge, Woodward, Hobson
& Fulton, H. G. Breetz, M. D. Jones,
Louisville, Ky., for plaintiff.

Charles I. Dawson, Edwin F. Schaeffer, Jr., Bullitt, Dawson & Tarrant, Louisville, Ky., for defendants.

Heiss, Day & Bennett, Harold N. McLaughlin, Cleveland, Ohio, V. C. Shuttleworth, Cedar Rapids, Iowa, and Wayland K. Sullivan, Cleveland, Ohio, of counsel.

BROOKS, Chief Judge.

This cause coming on for a further and final hearing and the Court, having considered all pleadings, oral testimony, affidavits, exhibits, and the briefs and arguments of counsel, finds the facts and renders conclusions of law as follows:

### Findings of Facts

1. The plaintiff (herein referred to as L&N or carrier) is a corporation organized and existing under the laws of Kentucky, and is a common carrier by railroad subject to the Railway Labor Act (45 U.S.C.A. § 151 et seq.).

2. The defendants Brotherhood of Locomotive Firemen and Enginemen, Brotherhood of Locomotive Engineers, Order of Railway Conductors and Brakemen and the Brotherhood of Railroad Trainmen (herein referred to as BLF&E, BLE, ORC&B and BRT, respectively, or as the labor organizations) are unincorporated labor organizations within the meaning of the Railway Labor Act. The BLF&E is the collective bargaining representative for firemen and hostlers employed by plaintiff; the BLE is the collective bargaining representative for engineers employed by the plaintiff; the ORC&B is the collective bargaining representative for plaintiff's conductors and brakemen; and the BRT is the collective bargaining representative for trainmen employed by the plaintiff.

3. The defendants Jake Paschall, H. J. Roadcup, L. G. Mullinix and J. M. King are the General Chairmen, throughout the property of the plaintiff, of the BLF&E, BLE, ORC&B and the BRT, respectively. All of the employees of the plaintiff represented by the four labor organizations are defendants herein and are too numerous to name. The defendants Jake Paschall, H. J. Roadcup, L. G. Mullinix and J. M. King fairly and adequately represent herein all persons employed by the plaintiff as firemen and hostlers, engineers, conductors and brakemen, and trainmen, respectively.

4. By this action the plaintiff seeks a permanent injunction against a strike threatened by the four labor organizations to enforce a money award of the First Division, National Railroad Adjustment Board (herein referred to as Adjustment Board or Board) in a case involving Fireman B. G. Humphries.

5. This proceeding is the result of an actual case involving a dispute between the L&N and the BLF&E over the discharge of Fireman Humphries, a member of the BLF & E. Fireman Humphries was discharged from the service of the L & N on March 31, 1956, after a hearing on a charge of assaulting, on February 15, 1956, while he was off duty, two other employees of the L&N who were on duty and on the property of the carrier.

6. On April 11, 1956, the General Chairman of the BLF&E, on behalf of Fireman Humphries, formally protested the dismissal in a letter to the Director of Personnel of the L&N and demanded that Humphries be restored to service with former seniority unimpaired and paid for time lost. This grievance was discussed between representatives of the BLF&E and the L&N during several conferences, the last of the conferences at this stage being held on or about June 7, 1957. The L&N refused to reinstate Humphries. During these conferences no discussion was had as to whether Mr. Humphries had earnings in outside employment or whether, if so, such earnings were to be considered in arriving at the amount of back pay that would be due the claimant should he be reinstated to service. Because the L&N would not accede to the demands to reinstate Humphries, the BLF&E threatened to call a strike.

7. On June 13, 1957, the L & N submitted the claim of Fireman Humphries to the Adjustment Board for its decision. The claim was submitted by the L&N to

the Adjustment Board in the exact language as the claim had been submitted to the L&N by the General Chairman of the BLF&E. The claim, in both instances, was stated as follows:

"Request that Fireman B. G. Humphries, Louisville Main Stem First Division, be reinstated to service with former seniority unimpaired and paid for all time lost. Article 31."

8. The regular members of the Adjustment Board could not agree as to whether this claim of Fireman Humphries should be denied or sustained and a referee was assigned to break the deadlock. On May 14, 1958, the Adjustment Board, with the referee sitting as a member, issued its Award 18720 which held:

"Claim sustained with pay for time lost as the rule is construed on the property."

On the same day, an order was entered by the Adjustment Board directing that its Award 18720 be complied with on or before June 14, 1958.

9. The evidence shows without contradiction that the rule referred to in Award 18720 is a part of Article 31 of the agreement between the L&N and the employees represented by the BLF&E, the specific section of the rule being Article 31(f) which provides as follows:

"If the discipline administered is not sustained, it will be cancelled and the fireman in question will be paid for any time lost by him resulting from the investigation or action taken.

"Note: This section applies only where a fireman is held out of service on account of his responsibility, and does not refer to loss of time on account of being held off of his run to attend investigation."

10. On May 17, 1958, the Director of Personnel of the L&N ordered that Fireman Humphries be restored to the service. On the same date the L&N, following a procedure it had followed in the past in such instances to obtain information for the purpose of deducting outside earnings, requested that Fireman Humphries furnish the carrier with a statement of his earnings in other employment, if any, while out of L&N service. The General Chairman of the BLF&E was advised of this request by the L&N on the same date.

It has been the consistent position of the defendants that outside earnings shall not be deducted, and it has been the consistent position of the plaintiff that outside earnings shall be deducted.

11. Fireman Humphries has failed and refused to furnish the L&N with any statement concerning his earnings in other employment while out of L&N service. The General Chairman of the BLF&E, on May 20, 1958, advised the L&N's Director of Personnel that Award 18720 and Article 31(f) of the agreement did not authorize any deduction for earnings in outside employment and demanded that the L&N pay to Fireman Humphries the full amount he would have earned with the L&N without any deduction for earnings in outside employment.

12. On June 26, 1958, the Director of Personnel of L & N advised the General Chairman of the BLF&E, in part, as follows:

"We have secured from our Accounting Department necessary data for determining what Mr. Humphries would have earned as fireman between March 31, 1956 and May 29, 1958, had he not been discharged, and are ready to discuss with you the money payment due him under Award 18720. But we certainly cannot agree with you that his outside earnings during the time he was out of L&N service should not be deducted.

\* \* \* \* \* \*

"Fireman Humphries has declined to furnish statement of his outside earnings. If and when this is done, we are ready to make whatever money payment may be due him under Award 18720."

13. During July, 1958, conferences were held on the property of the L&N concerning the dispute as to the meaning and proper application of Award 18720. The General Chairman of the BLF&E invited the General Chairmen of the BLE, ORC&B and the BRT to attend these conferences.

Fireman Humphries is a member of the craft or class known on the railroad as "firemen" and he is a member of the BLF&E. His claim for reinstatement and back pay was submitted to the L&N by the BLF&E. The BLF&E alone represented Fireman Humphries before the Adjustment Board where the dispute involved only the provisions of the agreement between the L&N and the employees represented by the BLF&E. The BLF&E was the only labor organization that was a party to the dispute before the Adjustment Board in the case involving Award 18720.

Representatives of the BLE, ORC&B and the BRT were invited to attend the July, 1958 conferences by the General Chairman of the BLF&E, pursuant to "an agreement of the four Brotherhoods to cooperate in all complaints in respect to the application of awards by the First Division of the National Railroad Adjustment Board."

During these conferences the representatives of the four labor organizations urged representatives of the L&N to ignore any outside earnings Fireman Humphries may have had in applying Award 18720. The L&N representatives contended that, since the BLF&E and the L&N could not agree concerning the proper application of Award 18720, the matter should be referred to the Board for an interpretation pursuant to Section 3 First (m) of the Railway Labor Act. Such a proceeding had been followed by the carrier in a similar dispute between BRT and the Terminal Railroad Association of St. Louis in Award 11825, First Division of the Board. The BLF&E was unwilling to seek or join the L&N in seeking an interpretation of Award 18720 from the Board, and contended there was no bona fide dispute as to the meaning of the award. At the conclusion of the conference on July 30, 1958, the L&N was requested to furnish a written statement concerning its position in applying Award 18720.

14. This request was complied with by the L&N by a letter dated August 9, 1958, from the carrier's Director of Personnel to the General Chairman of the BLF&E. This letter read, in part:

"This letter has further reference to the case of Fireman B. G. Humphries who was restored to the service in June of this year in compliance with First Division Award 18720. It is being written at your request to confirm the several conferences we have had, the last one on July 30th, concerning our disagreement over the proper application of that part of the Award reading 'with pay for time lost as the rule is construed on the property'.

\* \* \* \* \* \*

"We have complied with that part of Award 18720 with respect to restoring Fireman Humphries to the service. We stand ready to comply with the balance of the Award, which we interpret to permit deduction of outside earnings, as soon as Fireman Humphries furnishes the requested statement showing this information so that the amount due him under the Award may be determined."

15. During August, 1958, the representatives of the labor organizations commenced taking preliminary steps in order to call a strike for the purpose of compelling the L&N to comply with Award 18720 without any deduction of outside earnings.

16. On September 28, 1958, the L&N filed with the Board an ex parte "Request for Interpretation" of Award 18720, in which it was alleged that a dispute existed between the parties involving the proper application of the award in connection with determining the amount due the claimant for time lost. This "Request for Interpretation" set forth the

nature of the dispute and requested the Board to clarify its Award 18720 with respect to pay for time lost.

17. The Executive Secretary of the Adjustment Board, by letter dated October 9, 1958, requested the General Chairman of the BLF&E to advise whether or not a dispute existed as to the meaning of Award 18720. The General Chairman, by letter dated November 14, 1958, opposed the carrier's "Request for Interpretation" and advised the Executive Secretary of the Board that, prior to the carrier's original submission, no issue had been raised on the property concerning outside earnings, that the carrier had not requested an Award permitting deduction of outside earnings, and that the petition for interpretation was, in fact, a presentation of a new case and a dispute not before the Board at the time it rendered Award 18720. This letter was concluded with the following paragraph:

"This will advise you that there is no dispute on the part of the Brotherhood of Firemen and Enginemen as to the meaning or intent of Award 18720 and the carrier is simply attempting to have the Award changed in the guise of an interpretation."

18. On December 17, 1958, a divided Board with the referee sitting to break the deadlock, adopted the contentions advanced by the BLF&E and held as follows:

"The above numbered award sustained a claim for reinstatement of claimant to service with pay for time lost as the rule is construed on the property.

"In its request for interpretation carrier asserts that a dispute exists between the parties as to the proper application of the award in that carrier asserts and the organization denies that outside earnings during the period held out of service should be deducted in computing pay for time lost. Wherefore carrier seeks to have the Division determine that

dispute as an interpretation of its award.

"Facts and supporting data as to that issue were not included in the docket on which Award 18720 was predicated, the issue here raised was not submitted to the Division for determination, and we may not now determine a new issue in the guise of an interpretation of the issue formerly decided. See Award 17500 and 'Interpretation' thereof."

19. A further conference was held on the property of the L&N on January 23, 1959, between representatives of the L&N and the four labor organizations. Representatives of the labor organizations again demanded that Fireman Humphries be paid wages without any deduction of outside earnings and advised that a strike date would be set if this were not done. L&N representatives declined to so apply the award and suggested that the controversy be resolved by submitting it to the Board as a new dispute.

20. On January 23, 1959, representatives of the L&N submitted the controversy ex parte to the Adjustment Board as a new dispute for its decision.

21. The General Chairmen of the four labor organizations, on February 10, 1959, sent the following telegram to the Director of Personnel of the L&N:

"Telegram

Louisville, Ky. Feb. 10, 1959.
"W S Scholl Director Of Personnel Louisville & Nashville Railroad 908 West Broadway Lville This Will Advise Employes Represented By BLE BLF&E ORC&B and BRT Will Withdraw From Carrier's Service At 12:00 Noon Friday February 13, 1959 In A Joint Legal Strike Approved And Authorized By The Brotherhood's Chief Executives Due To Carrier's Adamant Insistence That Outside Earnings Of Fireman Humphries Must Be Deducted From Any Money Due Him Under Award 18720

H J Roadcup Jake Paschall
L G Mullinix J M King"

On the same date, February 10, 1959, the Director of Personnel received the following telegram from the Executive Secretary of the National Mediation Board, Washington, D. C.:

"Telegram

Washington, D. C., Feb. 10, 1959
"W. S. Scholl, Dir Pers.

Louisville & Nashville Railroad Co. Lville Following Wire Received From Messrs. Brown, Gilbert, Paddock And Kennedy 'Strike Of Employes Represented By BLE, BLF&E, ORC&B And BRT On The Louisville And Nashville (Proper) Set For Twelve Noon Friday February 13, 1959 Account Refusal Of Carrier To Apply Award 18720 First Division NRAB. Please Accept This Telegram As Seventy-Two Hour Notice In Cases Of This Kind.' Please Wire Statement

E. C. Thompson Exect Secy NMB"

22. The L&N instituted this proceeding on February 12, 1959 and sought a temporary restraining order and a preliminary injunction, to be made permanent on final hearing, to restrain and enjoin the threatened strike. A temporary restraining order was issued on February 12, 1959 and a hearing was set for February 18, 1959, on the question of the issuance of a preliminary injunction. By agreement of all the parties, an order was entered on February 17, 1959, continuing the temporary restraining order in effect as a preliminary injunction until the action was determined by the Court on the merits. The case was assigned for trial on May 18, 1959.

23. The defendants then filed their joint answer, in which they allege that the Court is without jurisdiction to grant the injunctive relief. The joint answer also contains allegations that no bona fide dispute was pending before the Adjustment Board and that the carrier had acted in bad faith. The sole purpose of the strike by the four labor organizations is affirmatively alleged in their joint answer as a strike authorized for the "purpose of enforcing the award" and as a strike "called solely because of the plaintiff's refusal to comply with the plain provisions of an award entered by the National Railroad Adjustment Board."

24. On April 30, 1959, the plaintiff filed a motion for judgment on the pleadings upon the ground that the joint answer of the defendants constituted an admission by the defendants that the threatened strike was called for the purpose of enforcing a money award of the National Railroad Adjustment Board, and that the threatened strike constituted a violation of the Railway Labor Act.

25. This cause came on for hearing on May 18, 1959, on the carrier's motion for judgment on the pleadings and for final trial. Disposition of the motion for judgment on the pleadings was passed by the Court until such time as all proof had been heard. Testimony of witnesses was heard by the Court on May 18, 1959. Upon the call of the case on May 19, 1959, counsel for all parties appeared and agreed that the taking of proof should be suspended and the case passed until January 4, 1960, and each of the parties agreed that "it would promptly use its best efforts to secure an advancement by the National Railroad Adjustment Board, First Division, of the presently pending submission involving the claim of B. G. Humphries, to the end that it may be disposed of by that Board on or before January 4, 1960." An order was entered by the Court in accordance with the agreement of the parties, and the case was passed until January 4, 1960.

26. On December 9, 1959, an equally divided Board with a referee sitting to break the deadlock, dismissed the L&N's submission of the controversy as a new dispute, holding that Award 18720 disposed of the claim of Fireman Humphries for reinstatement and back pay and that "the matter must be judged res judicata."

27. The defendants, on December 22, 1959, filed a motion to dissolve the "tem-

porary injunction issued herein on February 12, 1959" on the ground that the carrier's submission before the Board had been disposed of and the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., prohibited "the continuance in force of the temporary injunction." On December 23, 1959, the plaintiff filed a motion for leave to file an amendment to the complaint, a copy of which was attached and served, "for the purpose of clarifying the allegations of the complaint." The amendment to the complaint contained detailed allegations in support of the carrier's contention that the strike for the purpose of enforcing Award 18720, a money award of the Adjustment Board, was a strike in violation of the Railway Labor Act. On May 31, 1960, the defendants filed their joint answer to the amendment to the complaint in which they denied all allegations except that they admitted that the threatened strike would cause the carrier irreparable injury. The amendment to the complaint was subsequently ordered filed.

28. By agreement of the parties, the Court entered an order permitting additional evidence to be introduced by affidavits. They are now completed and constitute a part of the record. On October 5, 1960, the parties concluded the filing of extensive briefs.

29. The ultimate issues now before the Court for decision are shown by these basic contentions of the parties:

(a) The L&N contends that the threatened strike is to enforce Award 18720 of the Board and that a strike to enforce this money award is repugnant to the Railway Labor Act and unlawful.

(b) The contentions of the labor organizations are basically two-fold:

(1) They deny that the threatened strike violates the Railway Labor Act and is unlawful and allege that the Norris-LaGuardia Act deprives the Court of jurisdiction and power to issue the requested injunction; and

(2) They assert that the L&N has acted in bad faith in handling the Humphries claim and that no bona fide dispute exists as to the meaning of Award 18720 or Article 31(f) of the agreement, all in support of their contention that the Court, in the exercise of sound discretion, should refuse to grant equitable relief to the carrier in any event because it has "unclean hands".

30. A great deal of evidence has been introduced relative to the propriety of deducting outside earnings under Award 18720 or Article 31(f) of the agreement. The Court has considered all of this evidence to determine whether the L&N is guilty of bad faith or has "unclean hands" as charged by the defendants.

■ The Court, without purporting to make a finding as to whether or not outside earnings are properly deductible, does find that the L&N has exercised good faith and is not guilty of bad faith or of coming into Court with "unclean hands".

L&N was not required to accede to the unions' interpretation of Award 18720 and Article 31(f) of the agreement. When it became obvious that a disagreement existed as to the interpretation of that award, the L&N was justified in seeking to have it resolved by the National Railroad Adjustment Board. The evidence shows that the Adjustment Board had in the past made such interpretations of its awards and such procedure is provided for by the Railway Labor Act. (45 U.S.C.A. § 153, First (m).

L&N has shown that its opinion of a right to deduct outside earnings was not a frivolous one nor "a wilful and perverse attempt to evade and violate the provisions of Article 31(f)" as contended by the defendants. The various opinions of the Adjustment Board, and the opinion of the Kentucky Court of Appeals in the Wells Case (Louisville & N. R. Co. v. Wells, 289 Ky. 700, 160 S.W. 2d 16) justified L&N's opinion. The record further shows that in previous discipline cases involving the defendant organizations, L&N has sought advice as to whether or not there were outside

earnings, and the present General Chairman of the BLF&E had notice that such advice was sought.

Among the Adjustment Board awards involving the deduction of outside earnings is Award 16408 of the First Division which, in part, reads:

"Among union-management agreements, some explicitly authorize such deductions and a few prohibit them; but most are silent on the question, being content either not to mention compensation for lost time or merely to state in general that such compensation shall be paid, but without defining explicitly what is meant by 'compensation', 'lost time', or 'lost earnings'. We are of the opinion that, where an agreement is not explicit and where there is no controlling practice to the contrary on a property, a general rule mentioning compensation for lost time or earnings shall be interpreted so as to permit or authorize deduction for earnings in outside employment. This is because we incline to the view, supported in import by law and by a number of awards of this Division, that the primary purpose of providing such compensation is to make the wronged employe whole. We think such an employe is made whole when he receives an amount of compensation from his primary employer plus wage income from one or more 'outside' employers equal to the amount he would have earned if he had worked steadily with the primary employer in the absence of wrongful deprivation of such work."

The defendants have conceded in their brief that a Court of Law would probably allow the deduction of outside earnings to be made. It was not bad faith on the part of the L&N to take a position that, concededly, has generally been held by the courts to be legally justifiable.

■ The fact that L&N, in national rules cases, had served Section 6 notices relative to a desired rewording of Article 31(f) does not show bad faith on its part in taking the position it has. The reason for serving such notices is adequately explained in the evidence. The effect of those notices is not as contended by defendants as is further shown by National Railroad Adjustment Board Award 16408 of the First Division which, in part, reads:

"It has been contended that, because the carriers sought from the railroad labor organizations a specific rule authorizing the deduction of outside earnings in such cases, the carriers have admitted that most present rules on the matter are to be interpreted as not allowing or authorizing such deductions. We are not persuaded that this conclusion is necessarily valid. In our opinion the most that can be inferred from this move by the carriers is that most of the present rules are so general as to be susceptible of various and conflicting interpretations."

31. In accordance with the stipulation of the parties, the Court further finds that the carrier would suffer irreparable injury in the event of the strike. The amount involved exceeds $10,000 exclusive of interest and costs.

32. The Court finds that no court enforcement proceeding of Award 18720 has been filed pursuant to the provisions of Section 3 First (p) of the Railway Labor Act (45 U.S.C.A. § 153 First (p)), and that the sole purpose of the threatened strike is to enforce Award 18720, a money award of the First Division, National Railroad Adjustment Board. There is no dispute concerning this purpose of the threatened strike.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of the action.

■ 2. The Railway Labor Act, as interpreted by the Supreme Court, recognizes two separate classes of railway labor disputes referred to as "major" disputes and "minor" disputes. The first

class relates to disputes over the formation of collective agreements and look to the acquisition of rights for the future. "Minor" disputes contemplate the existence of an agreement and are controversies as to rights accrued, usually involving only one employee. The dispute between the L&N and the BLF&E involving the claim of Fireman Humphries is a "minor" dispute. Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886; Brotherhood of R. Trainmen v. Chicago River & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

3. By the enactment of the Railway Labor Act Congress has provided a complete statutory plan for the orderly and peaceful settlement of such "minor" disputes. Among the expressly stated purposes of the Act are: "(1) To avoid any interruption to commerce or to the operation of any carrier engaged therein;" and " * * * (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Sec. 2 (45 U.S. C.A. § 151a).

4. Section 3 First (m) of the Railway Labor Act (45 U.S.C.A. § 153 First (m)) provides that the Adjustment Board's "awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." Award 18720 of the First Division, National Railroad Adjustment Board, is a "money award" which falls within the exception of Section 3 First (m) of the Act and does not constitute a "final and binding" award.

5. Additional procedure for the orderly and peaceful settlement of "minor" disputes beyond the rendering of the Board's award are expressly provided for in the Act. In case of dispute involving an interpretation of the award either party may request the Division to interpret the award in the light of the dispute. Section 3 First (m). In case of an award favorable to a claimant, the Division shall make an order, directed to the carrier, to make the award effective and, if the payment of money is required, to pay such sum to the employee. Section 3 First (o). If the carrier does not comply with an order, enforcement may be sought in a suit by, as here, the BLF&E or Humphries, in a District Court of the United States as provided in Section 3 First (p) of the Act. (45 U.S.C.A. § 153 First (m), (o) and (p)).

6. The enforcement suit provided by Section 3 First (p) of the Act is an integral part of the entire statutory plan for the complete and final settlement of such a "minor" dispute as is involved here.

7. "The specification of one remedy [in the Railway Labor Act] normally excudes another." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 97, 88 L.Ed. 61; Union Pac. R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460.

8. The existence of the complete statutory scheme for the orderly and peaceful settlement of such "minor" disputes cannot realistically be squared with the contention that Congress did not purpose to foreclose strikes, such as the one involved here, called solely for the purpose of enforcing a money award of the National Railroad Adjustment Board. Denver & Rio Grande W. R. Co. v. Brotherhood of R. Trainmen, D.C.Colo.1960, 185 F.Supp. 369.

9. Congress having expressly provided a means of enforcement of the Board's award by the detailed provisions of Section 3 First (p) of the Railway Labor Act, the prescribed procedure excludes any other means of enforcement, including enforcement by strike. Denver & Rio Grande W. R. Co. v. Brotherhood of R. Trainmen, D.C.Colo.1960, 185 F. Supp. 369.

10. The purpose of the strike is to force the carrier to pay a "money award" without the defendant BLF&E's securing a judgment of a proper District Court of the United States under Section 3 First (p) of the Railway Labor Act. The

BLF&E has failed to exhaust its remedies under the Railway Labor Act, and the threatened strike is in violation of that statute.

■ 11. The Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) has not withdrawn the power of federal courts to issue injunctions in labor disputes in all instances. The "Norris-LaGuardia Act cannot be read alone in matters dealing with railway labor disputes. There must be an accommodation of that statute and the Railway Labor Act so that the obvious purpose in the enactment of each is preserved." Brotherhood of R. Trainmen v. Chicago River & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 640, 1 L.Ed.2d 622.

12. In this instance the specific provisions of the Railway Labor Act take precedence over the earlier and more general provisions of the Norris-LaGuardia Act. The Court has jurisdiction and power to issue necessary injunctive orders to vindicate the processes of the Railway Labor Act. Brotherhood of R. Trainmen v. Chicago River & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

13. This Court has jurisdiction and power, notwithstanding the provisions of the Norris-LaGuardia Act, to issue a decree enjoining the threatened strike called for the express purpose of enforcing Award 18720, a money award of the First Division, National Railroad Adjustment Board. Denver & Rio Grande W. R. Co. v. Brotherhood of R. Trainmen, D.C., 185 F.Supp. 369, and cases cited therein.

■ 14. The BLF&E, the authorized representative of Fireman Humphries and a party to the Board proceedings in Award 18720, cannot lawfully strike to enforce this money award of the Adjustment Board. The Court concludes that the BLE, ORC&B and the BRT, none of which represent Fireman Humphries and none of which were parties to any of the proceedings before the Board, cannot lawfully strike to enforce Award 18720, notwithstanding the pro-

visions of any agreement that may exist among the four labor organizations to the contrary.

15. Since the evidence does not support any finding that the carrier has acted in bad faith or has "unclean hands", this affirmative defense must be denied.

16. The carrier has exhausted all available remedies and has no adequate remedy at law.

17. The Court concludes:

(a) The motion of the L&N for judgment on the pleadings should be overruled since the Court has considered the case on the merits.

(b) The defendants' motion to dissolve the "temporary injunction" should be denied.

(c) The plaintiff's prayer for a permanent injunction should be granted, and a permanent injunction should issue.