**BROTHERHOOD OF RAILROAD SIGNALMEN, Plaintiff,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY,
a corporation, Defendant.**

**No. 67 C 1215.**

United States District Court
N. D. Illinois, E. D.
Feb. 23, 1968.

Edward B. Henslee, Jr., John J. Naughton, Chicago, Ill., for plaintiff.

Anthony W. Summers, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, District Judge.

Petitioner, the Brotherhood of Railroad Signalmen, brought this action to enforce an Award and Order of the National Railroad Adjustment Board, Third Division. This court has jurisdiction of the action under Section 3 of the Railway Labor Act, as amended, 45 U.S. C. § 153. The amount in controversy exceeds $10,000, exclusive of interest and costs.

The plaintiff is an unincorporated labor association with headquarters at Chicago, Illinois. It is a standard railway labor organization organized in accordance with the Railway Labor Act as amended. It serves as the representative duly designated and authorized under the Railway Labor Act of employees in the craft or class of Signalmen on carriers throughout the United States.

The defendant is a corporation incorporated under the laws of the State of Wisconsin. It is a common carrier by railroad engaged in interstate operations, is subject to the Interstate Commerce Act, and is a "carrier" as defined in the Railway Labor Act as amended, 45 U.S.C. § 151. Defendant's principal place of business is in Chicago, Illinois.

The plaintiff is, and has for many years been, the duly authorized collective bargaining representative of defendant's employees comprising said craft or class. As such representative, it has entered into agreements which govern the rights of the craft or class represented and which, in particular, govern the seniority rights of those employees. By the terms of these agreements, the positions and work of signalmen were made subject thereto. It was the intent, purpose, and effect of these agreements to permit the employees represented to acquire seniority rights and the right to bid on various positions within the craft or class represented under procedures set out in the agreements.

The essential facts concerning the history of the dispute at hand, as found by the Third Division of the National Railroad Adjustment Board, are as follows: On June 1, 1962, R. C. Smith, a member of plaintiff union, was displaced from his position as Signal Maintainer at Ellensburg, Washington, by a senior Signal Maintainer. Smith, in turn, notified defendant carrier that he was exercising displacement rights over a junior Signal Maintainer located at Calder, Idaho. Smith, however, failed to report for duty at Calder within ten days of his notification. Subsequently, he bid on an advertised Signalman position in a Coast Division Gang. Defendant, however, awarded the position to an employee junior to Smith. Defendant contended that Smith had forfeited his seniority rights by failing to report for the position he had previously claimed in Calder, thereby failing to comply with provisions of the schedule rules relating to reduction in force.

Smith having been declined reinstatement on the property, plaintiff initiated a claim before the Third Division of the National Railroad Adjustment Board, under section 3 of the Railway Labor Act, as amended, 45 U.S.C. § 153, claiming (a) that defendant carrier violated the current Signalmen's Agreement; (b) that defendant carrier should be required to assign R. C. Smith to the signalman position for which he had bid and been turned down; (c) that defendant carrier be required to compensate R. C. Smith for forty hours a week at the pro rata rate and for all overtime hours worked by the signal crew at the punitive rate, beginning November 30, 1962, and continuing until his claim had been satisfied; and (d) that R. C. Smith be given sufficient credit so that he would obtain a 1963 paid vacation, since such signal work would be sufficient to satisfy such requirements.

After considering the evidence and the contentions of the parties, the Third Division of the NRAB, on February 18, 1966, issued an award, number 14162, sustaining the plaintiff's claim in its entirety. On the same day it issued an Order directing the defendant to make the award effective on or before May 1, 1966.

R. C. Smith returned to work on March 14, 1966. Defendant carrier offered to compensate Smith for the amount of money which was the difference between what he would have earned had he not been discharged and what he actually earned during that period. Plaintiff then commenced this action, claiming that since the Board sustained the claim of the petitioner, and since defendant did not urge before the Board

that outside earnings be deducted, Smith is entitled to damages equal to the gross amount of the wages he would have earned at the position which was withheld from him.

The parties have stipulated that Smith's gross wages from the defendant carrier during the period from November 30, 1962, when he was discharged, to and including March 13, 1966, when he was reinstated, would have been $19,366.01. They have further stipulated that his actual earnings during that period were $15,447.00

Plaintiff claims damages in the amount of $19,366.01. Defendant seeks a remand of the dispute to the Adjustment Board for determination of the deductibility of outside earnings.

This court rules, in favor of defendant carrier, that the dispute must be remanded to the Board for resolution of this issue.

Plaintiff's request that this court enforce the Board's order cannot be granted, because the money award made by the Board is not final and capable of enforcement. As will be shown below, the Board did not determine the precise amount of the money award to be granted, and it is impossible to tell whether its award did or did not contemplate the deduction of outside earnings. The language of the Board's opinion neither precludes nor necessarily requires such deduction. In all probability, the Board did not consider the question.

■ The Board did not make a final determination with respect to the money award, because at the time it made the award, it was not required to do so. Section 3 First (m) of the Act, 45 U.S. C. § 153 First (m), at that time provided that "awards shall be final and binding upon both parties to the dispute, *except insofar as they shall contain a money award.*" (Emphasis supplied.) Final determination of the amount of money awards, including resolution of disputes concerning the deductibility of outside earnings, was routinely made by district courts in proceedings for en-

forcement brought under section 3 First (p) of the Act. See, e.g., Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Raabe v. Florida East Coast Ry. Co., 259 F.Supp. 351 (M.D.Fla.1966). Since money awards were not final and binding on the parties, they could be appealed for a de novo hearing on the amount of the awards. Gunther v. San Diego & Arizona E. Ry. Co., 382 U.S. 257, 264, 86 S. Ct. 368, 15 L.Ed.2d 308 (1965); Russ v. Southern Ry. Co., 334 F.2d 224 (6th Cir. 1964), cert. denied, 379 U.S. 991, 85 S. Ct. 699, 13 L.Ed.2d 611, rehearing denied, 380 U.S. 938, 85 S.Ct. 935, 13 L. Ed.2d 826 (1965). Questions concerning the deductibility of outside earnings were (and still are) also made by the Board under section 3 First (m), which provides that "in case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute." See Louisville & Nashville R.R. v. Brotherhood of Locomotive Engineers, 190 F.Supp. 829, at 835 (W.D.Ky.1961), aff'd, 297 F.2d 608 (6th Cir.1961), aff'd, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963).

■ After the Board had entered its order in the case at hand, on February 18, 1966, the Railway Labor Act was amended, on June 20, 1966, to provide merely that "awards shall be final and binding upon both parties to the dispute." No exception is now made for money awards. The principal accomplishment of this amendment of (m) was to attach finality to the money award, as well as to other parts of the award. Northwest Airlines, Inc. v. Air Line Pilots Ass'n, International, 373 F.2d 136 (8th Cir.1967).

■ Because of this amendment, the parties agree, this court lacks authority to make an independent determination on the amount of the money award, even though the Board's order was entered prior to the amendment. Brotherhood

of Railroad Trainmen v. Denver & R.G. W.R., 370 F.2d 833 (10th Cir.1966), cert. denied, 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456. As will be further discussed below, this court has authority only to enforce the Board's order, set it aside in whole or in part, or remand it to the Board for further consideration. 45 U.S.C. § 153 First (p) & (q).

■ Turning, then, to an examination of the Board's ruling in this case, the court must conclude that the Board has not rendered an award that is final and capable of enforcement. The opinion of the Board first recites the claims of the petitioner, including the claim that "The Carrier now be required to compensate R. C. Smith for forty (40) hours per week at the pro rata rate, and for all overtime hours worked by the Signal Crew at the punitive rate, beginning November 30, 1962, and continuing until this claim has been satisfied." The opinion of the Board then concerns the merits of the claims, and the findings state jurisdictional facts and that the Carrier violated the Agreement. The award reads merely "Claim sustained."

Extracting the meager relevant portions of the opinion and award, we find only that the Board sustained the petitioner's claim that defendant be required to "compensate" Smith for certain hours of work during the period of wrongful discharge. The term "compensate" is not self-explanatory. Does it mean to require damages in the gross amount of the time out of work, or does it mean that the employee should be "made whole"?

The case of Louisville & Nashville R. R. v. Brotherhood of Locomotive Engineers, 190 F.Supp. 829 (W.D.Ky.1961), aff'd, 297 F.2d 608 (6th Cir.1961), aff'd, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963), compels the conclusion that an award for compensation does not constitute a clear and final money award. There was held that a labor union could be enjoined from striking to enforce a money award of the Adjustment Board in protest against the employer's contention that outside wages should be deducted from "pay for time lost" which the Adjustment Board had awarded, since the union had not petitioned for enforcement of the order under section 3 First (p) of the Act. The union argued, in this case, that the employer had "unclean hands" because it wilfully and perversely attempted to evade *the clear terms of the Board award* and a similarly worded provision of the agreement. In holding that the employer's interpretation was in good faith, the district court made the following statements which, although not directly in point, are clearly relevant to the meaning of the type of award made by the Board in the case at hand:

"The Court, without purporting to make a finding as to whether or not outside earnings are properly deductible, does find that the L&N has exercised good faith and is not guilty of bad faith or of coming into Court with 'unclean hands'.

"L&N was not required to accede to the unions' interpretation of Award 18720 and Article 31(f) of the agreement. When it became obvious that a disagreement existed as to the interpretation of that award, the L&N was justified in seeking to have it resolved by the National Railroad Adjustment Board. The evidence shows that the Adjustment Board had in the past made such interpretations of its awards and such procedure is provided for by the Railway Labor Act. (45 U.S.C.A. § 153, First (m).

"L&N has shown that its opinion of a right to deduct outside earnings was not a frivolous one nor 'a wilful and perverse attempt to evade and violate the provisions of Article 31(f)' as contended by the defendants. The various opinions of the Adjustment Board, and the opinion of the Kentucky Court of Appeals in the Wells Case (Louisville & N. R. Co. v. Wells, 289 Ky. 700, 160 S.W.2d 16) justified L&N's opinion. * * *

"Among the Adjustment Board awards involving the deduction of outside earnings is Award 16408 of the First Division which, in part, reads:

'Among union-management agreements, some explicitly authorize such deductions and a few prohibit them; but most are silent on the question, being content either not to mention compensation for lost time or merely to state in general that such compensation shall be paid, but without defining explicitly what is meant by "compensation", "lost time", or "lost earnings". We are of the opinion that, where an agreement is not explicit and where there is no controlling practice to the contrary on a property, a general rule mentioning compensation for lost time or earnings shall be interpreted so as to permit or authorize deduction for earnings in outside employment. This is because we incline to the view, supported in import by law and by a number of awards of this Division, that the primary purpose of providing such compensation is to make the wronged employe whole. We think such an employe is made whole when he receives an amount of compensation from his primary employer plus wage income from one or more "outside" employers equal to the amount he would have earned if he had worked steadily with the primary employer in the absence of wrongful deprivation of such work'

"The defendants have conceded in their brief that a Court of Law would probably allow the deduction of outside earnings to be made. It was not bad faith on the part of the L&N to take a position that, concededly, has generally been held by the courts to be legally justifiable." 190 F.Supp. at 835–836.

In light of this opinion and the authorities relied upon therein, this court would be unjustified in acceding to plaintiff's view that an award for "compensation" for the period of wrongful discharge is in clear terms, requiring payment in full for time lost without deduction of outside earnings. The term, standing alone, is not final and definitive, but requires interpretation of the purpose of the Board in awarding compensation. We cannot say that by its opinion, findings, and order in this case, the Board has made clear its purpose.

The plaintiff contends, however, that this court lacks authority under section 3 First (p) of the Act to grant the defendant's motion to remand the case to the Board. Petitioner correctly points out that subsection (p), under which this action was brought, authorizes only the enforcement or setting aside of a Board order.

Two issues are raised by the petitioner's argument. The first is the court's authority to remand this case to the Board for determination of the deductibility of outside earnings, and the second is the court's authority to do so on the ground that the Board's award lacks finality.

With regard to the first of these issues, the United States Supreme Court in Transportation-Communication Employees Union v. Union Pacific R.R., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), held that when a petition to enforce a Board award is filed under section 3 First (p), a district court may remand the cause to the Board under the provisions of section 3 First (q). In footnote 4, at page 165, at page 373 of 87 S.Ct. of the opinion, the court stated the following:

"At the time, the Court of Appeals had no alternative but to affirm the dismissal by the District Court, for district courts could only 'enforce or set aside' the Board's orders under § 3 First (p). They could not remand cases to the Board. This was changed on June 20, 1966, by Pub.L. No. 89–456, § 2(e), 80 Stat. 208, which inserted a new provision, § 3 First (q), empowering district courts to remand proceedings to the Board."

Subsection (q) of the Act, as amended, provides in part as follows:

"If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the divisions' order. * * * The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct."

The reasoning behind the Supreme Court's holding in the *Transportation-Communication* case, although not expounded, was clearly that a defendant-carrier, in a case brought by a union under subsection (p), may, by way of defense, avail itself of the provisions of subsection (q), which authorize the carrier to seek, and the court to grant, a remand of the case to the Board. This court, then, has authority to remand this case to the Board.

The second issue, concerning this court's authority to remand on the ground that the Board's award is not final and capable of enforcement, must be resolved on the basis of the language of subsection (q). Like subsection (p), subsection (q) permits the setting aside of an order, or the remanding thereof in the case of (q), only "for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

■■■ Logic compels the conclusion that an order which lacks finality may be set aside or remanded "for failure of

the division to comply with the requirements of this chapter * * *." The Railway Labor Act, although not specifically, impliedly requires clear, enforceable, final orders on the part of the Board. Prior to the 1966 amendments, such finality was not required of money awards; those amendments, however, have the effect of requiring finality for those awards, as well.

Cases under section 3 of the Act as it read prior to the 1966 amendments held that the Act required findings and awards (other than money awards) that were definite and capable of enforcement. See, e.g., Railroad Yardmasters of North America, Inc. v. Indiana Harbor Belt R. R. Co., 166 F.2d 326, at 330 (7th. Cir. 1948), and cases cited therein. The courts, then based their holdings upon the provision of subsection (p) which stated that the findings and order of the Board "shall be prima facie evidence of the facts therein stated." The courts reasoned that "the Act contemplates an award predicated upon findings sufficiently certain and definite as to make a prima facie case in an enforcement suit." Id., at 330.

Subsection (p) no longer states that the findings and orders shall constitute "prima facie evidence of the facts stated therein." Rather, it provides, as does subsection (q), that "the findings and order of the division shall be conclusive on the parties". Moreover, subsection (m) provides that "awards shall be final and binding upon both parties to the dispute."

■■ It is inescapable to conclude that if findings, awards, and orders must be certain and definite in order to be used as prima facie evidence, they must surely meet this requirement in order to be final, binding, and conclusive on the parties. The award in the case at hand does not meet this requirement; consequently, this court has authority under the Act to remand the Board's order.

One final question requires resolution. The petitioner contends that the defend-

ant has waived its right to obtain a determination of the deductibility of outside earnings by the Adjustment Board and so is not entitled to have the petition remanded. Plaintiff urges that defendant waived its right by failure to raise the question of deductibility in either the original proceeding before the Board or, after issuance of the Board's order, in a request under subsection (m) of the Act for a Board interpretation of the money award.

Subsection (m) provides that "In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

Plaintiff relies upon Independent School District No. 35, St. Louis County v. A. Hedenberg & Co., Inc., 242 Minn. 82, 7 N.W.2d 511 (1943), where the court held that a contractor had waived its contractual right to arbitration of a dispute because the contractor waited for over a year after the dispute arose, and until after the plaintiff had filed suit, to request arbitration.

In answer to plaintiff's argument regarding waiver, defendant asserts that it had no reason to petition the Board for an interpretation of the award, because at the time the award was made, money awards were not final and binding upon the parties, but were considered *de novo* by the district court.

■ This court finds that defendant has not waived its right to a determination of the deductibility of outside earnings by the Board. Defendant had no obligation to raise this question during the original proceeding, or when the order was made by the Board, knowing that the money award was not final and binding. Nor can it be said that amendment of the Act in June, 1966, placed a burden upon defendant to raise the question in a proceeding under subsection (m). Petitioner, as well as defendant, could have required a Board interpretation under subsection (m), but chose instead to petition this court under subsection (p).

■ Independent School District v. Hedenberg, supra relied upon by petitioner, being the decision of a state court, is, of course, not binding. But further, it is not in point. A contract case, it merely stands for the proposition that parties to a contract may, by their actions or inaction, waive a provision of the contract. Waiver is a question of intent. This court finds no evidence in the facts of this case establishing an intent by the defendant to waive its rights under the Act. The question of deductibility of outside earnings has regularly been determined in proceedings brought by the party seeking to enforce the Board order, and nothing in the Act placed the burden upon defendant to initiate proceedings for resolution of this dispute.

The questions of law raised in this proceeding are formed in favor of the defendant and against the petitioner. Award No. 14162 is hereby remanded to the National Railroad Adjustment Board, Third Division, for clarification regarding the deductibility of outside earnings, and the petition is dismissed.

This memorandum of decision will stand as the court's findings of fact and conclusions of law within the meaning of Rule 52 of the Federal Rules of Civil Procedure.