BROTHERHOOD OF RAILROAD SIG-
NALMEN, Plaintiff-Appellee,

v.

CHICAGO, MILWAUKEE, ST. PAUL
AND PACIFIC RAILROAD COM-
PANY, Defendant-Appellant.

No. 18468.

United States Court of Appeals,
Seventh Circuit.

June 28, 1971.

Anthony W. Summers, Chicago, Ill., James P. Reedy, Thomas J. McDonnell, Chicago, Ill., for Chicago, Milwaukee, St. Paul and Pacific Railroad Co., defendant-appellant.

Lloyd S. Kupferberg, Chicago, Ill., Donald W. Bennett, Ross, Kraushaar & Bennett, Cleveland, Ohio, Schwartz, Cooper & Kolb, Chicago, Ill., for plaintiff-appellee, Brotherhood of Railroad Signalmen.

Before PELL and STEVENS, Circuit Judges, and MORGAN, District Judge.[*]

STEVENS, Circuit Judge.

Defendant appeals from a judgment enforcing an award of the National Railroad Adjustment Board. The award is for $19,366.01, the full amount the claimant would have earned between November 30, 1962, and March 14, 1966, in work which the carrier wrongfully permitted a junior signalman to perform. Since the claimant had earned $15,447.00 in other work prior to his reinstatement, the carrier asserts a right to mitigation. More precisely, it contends that the case should be remanded to the Board for a hearing on the mitigation issue.

The award was entered on February 18, 1966, but no enforcement action was

[*] The Honorable Robert D. Morgan, District Judge, Southern District of Illinois, is sitting by designation.

commenced until after the amendment to the Railway Labor Act which became effective on June 20, 1966.[1] Prior to that amendment, the carrier could raise objections to the amount of a claim in the Board proceedings or, at its option, could wait until it was required to defend an enforcement action and then, for the first time, raise issues relating to the amount of the award. See Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co., 373 U.S. 33, 40–41, 83 S.Ct. 1059, 10 L.Ed.2d 172; Gunther v. San Diego & A. E. R. Co., 382 U.S. 257, 264–265, 86 S.Ct. 368, 15 L.Ed. 2d 308. In this proceeding the carrier elected to follow the latter course. It did not assert a right to mitigation in the Board proceedings which terminated in 1966. The question presented here arises because Congress changed the rules before the carrier was required to defend either of the two enforcement actions based on the award of February 18, 1966.

In the first action the parties agreed[2] that because of the 1966 amendment the district court had no authority to make an independent determination of the amount of the award even though the Board's order had been entered prior to the amendment. See Brotherhood of Railroad Trainmen v. Denver & Rio Grande Western Railroad Co., 370 F.2d 833, 835 (10th Cir. 1966), cert. denied 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456. The carrier contended, however, that the Board had not indicated whether or not outside earnings should be deducted, that this omission made the award ambiguous and incapable of enforcement, and, therefore, the case should be remanded for a determination by the Board of the deductibility of outside earnings.

Finding ambiguity in the award,[3] and also finding that the carrier had not waived its right to a determination of the mitigation issue, the district court remanded the case to the Board "for clarification regarding the deductibility of outside earnings, * * *." See 284 F.Supp. 401, 408.

On remand, the Board prepared a careful opinion which unambiguously concluded "that Railroad is legally obligated to pay Claimant $19,366.01 to effectuate compliance with paragraph (c) of the Claim." The Board did not determine whether or not the common law doctrine of mitigation would have been available to the carrier if the issue had been raised in the original administrative proceed-

---

1. On June 20, 1966, Congress enacted Public Law 89–456, stating its purpose:
   "To amend the Railway Labor Act in order to provide for establishment of special adjustment boards upon the request either of representatives of employees or of carriers to resolve disputes otherwise referable to the National Adjustment Board, and to make all awards of such Board final." 80 Stat. 208
   Section 2(a) provides:
   "The second sentence of section 3, First, (m), of the Railway Labor Act is amended by striking out ',except insofar as they shall contain a money award.'" 80 Stat. 209 amending 45 U.S.C. § 153 First (m).
   Section 2(c) provides:
   "The second sentence of section 3, First, (p), of such Act is amended by striking out 'shall be prima facie evidence of the facts therein stated' and inserting in lieu thereof 'shall be conclusive on the parties.'" 80 Stat. 210 amending 45 U.S. C. § 153 First (p).

2. The district court's opinion states:
   "Because of this amendment, the parties agree, this court lacks authority to make an independent determination on the amount of the money award, even though the Board's order was entered prior to the amendment." 284 F.Supp. 401, 404.

3. Although the award was preceded by an opinion explaining the decision on the merits, no attention was directed to the amount payable. The award itself simply stated, "claim sustained"; the Board's order read, in part:
   "The [carrier] is hereby ordered to make effective Award No. 14162 made by the Third Division of the National Railroad Adjustment Board (copy of which is attached and made part hereof), as therein set forth; and if the Award includes a requirement for the payment of money, to pay to the employe (or employes) the sum to which he is (or they are) entitled under the Award on or before May 1, 1966."

ings. It held that the carrier could have raised the issue, but that the Board had no jurisdiction to do so on its own motion since common law damage rules are not always applicable in Board proceedings. In failing to raise the issue, the "* * * railroad acted at its peril."

Because the Board did not determine the merits of the mitigation defense, the carrier again refused to pay, contending that disobedience of the district court's mandate was a jurisdictional defect in the award. In the second enforcement action, which was assigned to a different judge, the district court rejected this contention; it entered the judgment from which the carrier now appeals.

Defendant's position rests on a misconstruction of the district court's first judgment. If there had been no ambiguity in the original award, that would have been the end of the matter. As defendant then recognized, it was too late to question the amount of the award even though the carrier had made the unfortunate tactical decision to withhold its mitigation defense during the entire administrative proceeding. The 1966 amendment, which defendant may or may not have anticipated, eliminated the court's jurisdiction to consider the issue. Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western Railroad Co., 370 F.2d 833 (10th Cir. 1966). Cert. denied 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456. We believe a forthright request for a remand to enable the carrier to assert an improvidently omitted defense to the amount of the award would have been rejected. The remand was predicated on the narrow ground that the award was ambiguous and for that reason not capable of enforcement.

■ The district court's direction to the Board to make a determination of the deductibility of outside earnings was, therefore, a request for clarification of the order, not for a hearing on a new issue not previously raised. The mandate, as so construed, was faithfully followed by the Board. It plainly stated that "The common law of damages does not *per se* govern monetary awards of this Board" ; no deduction for oustide earnings was impliedly included in its original award. Moreover, the amount, though indefinite when the award was entered on February 18, 1966, became definite when the claimant was reinstated on March 14, 1966. The award having been clarified the purpose of the remand was accomplished.

The carrier argues, however, that the Board's decision flaunted the district court's finding that "defendant has not waived its right to a determination of the deductibility of outside earnings by the Board." See 284 F.Supp. 401, 408. Even if the Board's decision erroneously rested on a finding of waiver,[4] the award is nevertheless "conclusive on the parties" and may not be set aside by a court on the ground that the Board committed error.[5]

■ The Railroad replies, however, that the error is of a jurisdictional character because the record contains "no foundation in reason or in fact" for a rejection of the mitigation defense. See Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F.2d 403, 411–14 (5th Cir. 1969) ; Laday v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 422 F.2d 1168, 1171 (7th Cir.

4. We do not believe "waiver" is an accurate label for the Board's rationale. Congress deprived the carrier of the right to assert mitigation as a defense to the enforcement action. The defense was available before the Board and the carrier simply omitted to assert it during a period of over three years while the claim was pending.

5. The effect of the amendment quoted in footnote 1, *supra*, is to eliminate a court's jurisdiction to set aside awards, "except for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order." 45 U.S.C. § 153, First (p).

1970). This argument must also fail. First, it should be noted that both the merits of the claim and the amount due were established by uncontradicted evidence. It may be questioned whether the absence of a factual basis for rejecting one defense to the amount of an award is sufficiently fundamental to deprive the award itself of jurisdictional support under the "no basis in fact" test. Second, and of greater importance, this record, as well as the reasoning of the Fifth Circuit in the case upon which the carrier relies, identifies a rational foundation for the Board's action.

In the *Central of Georgia* case the Fifth Circuit noted that over 2,000 Board awards had recognized the principle of penalty pay,[6] and that custom and practice are valid bases for fashioning remedies if not explicitly excluded by the collective bargaining agreement.[7] Here the Board noted that the common law doctrine of mitigation did not, *per se*, govern the Board proceeding; it can hardly be accused of action "so irrational as to exceed its jurisdiction" because it attached significance to a litigant's failure to assert an available defense at any time during a protracted proceeding.[8] We believe the Board's reasoning is consistent with the congressional purpose "to eliminate the large backlog of undecided claims of railroad employees" and "to expedite disposition of grievances and disputes" reflected in the 1966 amendment.[9]

■ Finally, the carrier contends that it was error to allow prejudgment interest. We agree that the ambiguity in the award as originally entered makes it inappropriate to allow interest from the date of claimant's reinstatement, Laday v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 422 F.2d 1168, 1171–72 (7th Cir. 1970), particularly since plaintiff waited over a year before it commenced the first enforcement action. However, the ambiguity having been eliminated by the opinion of the Board dated December 19, 1968, interest should commence to run as of that date.

The judgment is affirmed.

---

6. See Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F.2d 403, 415 n. 22.

7. "Custom and practice, the parties agree, are valid bases for fashioning remedies where the contract does not explicitly exclude them. When, therefore, bases in custom and practice are shown that support the particular principle of penalty pay applied in this case, the Act forecloses further judicial scrutiny of the principle." Id., at 415–16.

8. The Board also expressed another rational (even if we assume *arguendo* that it is erroneous) basis for its decision in its interpretation of Article V of the National Agreement of August 21, 1954 (and also its own Rules of Procedure) as precluding consideration of matters not raised "on the property" before a formal claim had been filed.

9. See S.Rep. No. 1201, 89th Cong., 2d Sess. 1966, U.S. Code Cong. & Admin. News 1966, pp. 2285–2286.